[Civ. No. 25367. Second Dist., Div. Two. Aug. 28, 1961.]

JUNE V. NOICE, Respondent, v. NORMAN A. NOICE, Appellant.

Albert J. Corske for Appellant.

Mason, Kinley & Wallace and Donald C. Wallace, Jr., for Respondent.

HERNDON, J.—Defendant Norman A. Noice appeals from an order denying his motion to recall and quash a writ of execution and to vacate the order pursuant to which the writ was issued.

The writ was issued on April 27, 1960, upon plaintiff's application, to enforce defendant's obligation for child support in the amount of $1,560 alleged to have accrued during the period January 1, 1956, through April 1960, at $30 per month, plus interest and costs in the sum of $172.10. Defendant's motion to recall and quash the writ was submitted upon the affidavits of the parties supporting and opposing said motion, and upon plaintiff's affidavit supporting her application for the writ.

The parties are the parents of two children, Edgar Lee, born August 30, 1937, and Blaine, born March 12, 1942. The parties separated on August 6, 1946. On August 12, 1946, they entered into a property settlement agreement which, so far as material to the present controversy, provided as follows:

"That, subject to the approval and continuing jurisdiction of the Superior Court of the State of California, in and for the County of Los Angeles, the custody, control, education and support of the minor children of the parties hereto shall be and remain with the party of the first part . . .; and that the second party realizing his responsibility to support his said children, agrees to pay to the first party the sum of $75.00 per month for the support and care of said children, and to make said payments direct to the first party on the first day of each and every month hereafter. All payments for support shall be subject to the continuing jurisdiction of the said Superior Court . . .

"This agreement is executed in triplicate; that one copy thereof is to be filed in the papers of any court action brought by either party and the terms and provisions for custody of the minor children may be incorporated in any decree rend-

ered; that another copy shall be delivered to the party of the first part, and one copy to the party of the second part.''

The complaint for divorce filed on August 12, 1946, alleged the making of the property settlement agreement and the substance of its provisions above quoted with respect to the custody of the children, and defendant's promise to pay plaintiff $75 per month for their support. The prayer sought an allowance in the amount indicated.

The interlocutory judgment of divorce entered on November 6, 1946, awarded plaintiff the custody of the children and provided as follows with respect to their support: ''IT IS ADJUDGED that the property settlement agreement heretofore entered into by and between the parties hereto, a copy of which has been filed as an exhibit in this action, be, and the same is hereby, approved, *and that each of the parties hereto is ordered to keep, abide by and perform the terms and conditions thereof, and wherein the defendant agrees to make payments of money he is ordered to comply therewith and make said payments on the dates and in the amounts and manner as therein set forth.''* (Emphasis added.) The final judgment, entered in 1947, adopted the foregoing provisions of the interlocutory judgment.

In November of 1950, defendant had become delinquent in his child support payments in the amount of $2,925. Plaintiff obtained a writ of execution in that amount and caused it to be levied upon certain real property owned by defendant. By a written agreement, dated February 2, 1951, the parties worked out a settlement of defendant's past due obligation. By this agreement, defendant agreed to convey to plaintiff his interest in the real property upon which plaintiff had levied. In consideration of this conveyance, plaintiff agreed to execute and file a partial satisfaction of judgment, showing satisfaction of all claims for child support through December 1950. It was further provided that commencing January 1, 1951, defendant would pay to plaintiff the sum of $30 per month ''for the support of their minor child'' in lieu of the $75 per month as provided in the divorce decree.

On February 28, 1951, the parties executed an ''addendum'' to the agreement of February 2d. This addendum provided, among other things, that defendant would thereby convey to plaintiff certain described personal property, and that in consideration therefor plaintiff acknowledged satisfaction in full for all claims for child support ''for the period commencing January 1, 1951 and continuing to and until January

1, 1956, or until such time as [plaintiff] and her present husband shall adopt the children, whichever shall the sooner occur." There has been no adoption of either child.

On April 18, 1960, plaintiff filed her affidavit for the issuance of the writ of execution presently involved. This affidavit quotes the child support provisions of the property settlement agreement and the interlocutory judgment of divorce. It sets forth the substance of the written agreement of February 2, 1951, and the addendum thereto, purporting to satisfy defendant's child support obligations up to January 1, 1956. The affidavit avers that defendant has made no payment for child support since January 1, 1956; that during the period from January 1, 1956, to April 1, 1960, the sum of $1,560 accrued at the rate of $30 per month; and that "[t]he minor child of the parties, Blaine Arthur Noice, who was born March 12, 1942, and is now 18 years of age, resides with the plaintiff and has continuously resided with plaintiff at all times herein mentioned. The older child, Edgar Lee, born August 30, 1937, married in 1954, and is self-supporting."

The subject writ was issued on April 27, 1960. Defendant's motion to recall and quash the writ was filed on July 15, 1960, and was supported by his affidavit.

In this affidavit defendant testifies concerning the extent and value of the property which plaintiff received under the property settlement agreement and subsequent agreements. He states that he entered into the agreements of 1951 without the advice of counsel, under the "duress" of the writ of execution which plaintiff had levied, and in reliance upon oral representations of plaintiff and her counsel to the effect (1) that the property which plaintiff received under the 1951 agreements would fully satisfy all his child support obligations for the future; (2) that plaintiff would never thereafter make any claim for the support of either child; (3) that the provision for his payment of $30 per month after January 1, 1956, "was a mere formality"; and (4) that plaintiff and her husband would immediately adopt the two children.

Defendant's affidavit further states that since January 1, 1951, plaintiff has been financially well off and able herself to care for said minor children; that the property received by plaintiff under the property settlement agreement, and subsequent agreements, was ample to care for both children and was so intended; and that defendant has remarried and

now earns a modest salary, all of which is necessary to provide his family with the common necessities of life, so that it will cause his family extreme hardship to allow said levy of execution to stand.

Plaintiff's affidavit in opposition to the motion attaches as exhibits the 1951 agreements, the pertinent provisions of which have been recited above. Plaintiff's affidavit contradicts that of defendant in all material particulars with reference to the circumstances under which said 1951 agreements were executed and with respect to the value of the property which she received.

Plaintiff states that the only reason she agreed to a reduction of the child support payments from $75 per month to $30 per month was her reliance on a promise of defendant's mother "that she was going to see that Blaine got through college and that she would provide the sum of $2000 for his education"; that this promise was not fulfilled; that defendant's mother transferred all her properties to defendant and made no provision for Blaine's education.

Plaintiff's affidavit further alleges that defendant has had a regular income from his employment as a skilled machinist and has been the owner of income-producing properties in addition to his own residential property; and, finally, "[t]hat such sum of $30.00 per month for child support of Blaine, is in fact a sum which represents less than one-half of the actual amount of support expended by the plaintiff during said period of time. That the true amount of support for said minor child during the subject period would be in excess of $60.00 per month. That your affiant feels that it is only equitable to reimburse the affiant herein on the basis of $30.00 per month as requested by affiant."

After hearing, the matter was submitted upon the affidavits and the record, and defendant's motion was thereafter denied. We have concluded that the trial court's implied findings are well supported and that defendant's contentions with respect to the controlling questions of law are without merit.

Defendant first contends that "[t]he interlocutory judgment of divorce failed to incorporate the terms of the property settlement agreement so that in fact there was never any order for the appellant to pay anything for child support."

In deciding whether a merger has occurred "it is first necessary to determine whether the parties and the court intended a merger. If the agreement is expressly set out in the decree, and the court orders that it be performed, it is

clear that a merger is intended." (*Flynn* v. *Flynn*, 42 Cal.2d 55, 58 [265 P.2d 865].)

█ And, as further stated in the *Flynn* decision (p. 58) : "Whether or not a merger is intended, the agreement may be incorporated into the decree *either expressly or by reference. . . .* █ *In the absence of an express order to perform all or part of the agreement,* it may be difficult to determine whether or not a merger was intended. [Citations.]" (Emphasis added.) █ And, at page 59: "It is settled that a document may be incorporated *either expressly or by apt reference* into a judgment or decree so as to make it an operative part of the order of the court. [Citations.]" (Emphasis added.)

In *Foust* v. *Foust*, 47 Cal.2d 121 [302 P.2d 11], the decree of annulment read [pp. 122, 123] : "That the properties and property rights of plaintiff and defendant herein are adjusted, settled and distributed as per the terms and conditions of that certain AGREEMENT dated July 21st, 1943, executed by plaintiff and defendant herein, a full and true copy of which AGREEMENT is on file herein attached to said Stipulation marked 'Exhibit "A," ' and which is hereby approved by the Court and by this reference embodied in and made a part of this Judgment."

The Supreme Court therein said (p. 123) : "The nature of the agreement, its attachment to the stipulation for judgment, the filing of both documents with the court, and the plain language of the stipulation and the judgment entered thereon make the conclusion inescapable that merger was intended, thereby substituting rights and duties under the decree for those under the agreement." It was held that a provision for payment of monthly sums for the support of the defendant wife was enforceable by execution. (See also *Arthur* v. *Arthur*, 147 Cal.App.2d 252, 259 [305 P.2d 171].)

█ In the case at bar, it may be inferred from the language of the property settlement agreement quoted above that the parties intended the child support provisions thereof to be merged in the judgment. Reference is made to their agreement that "all payments for support shall be subject to the continuing jurisdiction of the said Superior Court" and to the provision that one copy of the agreement was "to be filed in the papers of any court action brought by either party and the terms and provisions for custody of the minor children may be incorporated in any decree rendered."

That the court rendering the divorce judgment intended a merger seems entirely clear. The judgment refers to the agreement as an exhibit on file in the action, approves it, *and orders its performance.* It orders defendant to make the agreed payments in such clear and specific language as to leave no room to doubt the court's intention to incorporate the specified provisions by its reference thereto.

The language from *Flynn* v. *Flynn, supra,* which we have quoted and emphasized indicates that the presence "of an express order to perform all or part of the agreement" is very strong evidence that a merger was intended. It is also made clear that incorporation of the agreement may be accomplished either by express language to that effect *"or by apt reference."* It will be observed that the decrees involved in *Foust* v. *Foust, supra,* and in *Arthur* v. *Arthur, supra,* did not contain express orders that the agreements be performed; other evidence of the intent to merge the agreements in the decrees was held sufficient in those cases.

 Defendant's second major contention is that it was error to refuse to recall the writ of execution which was issued to enforce collection of the unsegregated monthly payments which he had agreed to pay for both children when it appeared that one of the children had attained his majority prior to the period for which collection was sought.

The judgment of divorce upon which the writ was issued ordered defendant to pay $75 per month for the support of the two children. In her application for the writ, however, plaintiff properly disclosed the facts (1) that in 1951 the parties had agreed to reduce the payments to $30 per month; (2) that by agreement of the parties in 1951 defendant's child support obligations were satisfied for the period ending December 31, 1955; and (3) that Edgar, the older child, had attained his majority by virtue of his marriage in 1954, he being then over the age of 18 years.

Thus, plaintiff's application showed, on its face, that she was seeking to recover $30 per month for the support of the younger child, Blaine, who was 13 years of age at the beginning of the period in question and 18 at the date of the application for the writ. That defendant's duty to support the older child terminated in 1954 has never been questioned.

As we have shown in our review of the record, the trial court had before it at the hearing on defendant's motion to recall the writ the written agreements of 1951 and the conflicting affidavits of the parties as to the intent of those

agreements, the circumstances under which they were executed, and the extent or value of the consideration which plaintiff received therefor, and other relevant facts disclosed by the affidavits.

The trial court was required in this proceeding to review the matter, to ascertain the facts, to construe the agreements of the parties, and then to exercise its legal discretion in determining the extent of defendant's legal and equitable obligation to contribute to the support of his minor child during the period in question, and then to allow enforcement of the judgment accordingly. (*Wilkins* v. *Wilkins,* 95 Cal. App.2d 605 [213 P.2d 748], *Anderson* v. *Anderson,* 129 Cal. App.2d 403 [276 P.2d 862].)

In *Wilkins* v. *Wilkins, supra,* the support order in question required the defendant husband to pay $50 per month for the support of the wife and two children. The wife filed an affidavit in support of her application for a writ of execution in which she alleged that all support payments subsequent to a specified date, amounting to $2,950, were due and unpaid. Execution was issued in that amount.

Thereafter, the defendant moved to vacate the order and recall the writ on the ground that the court was not informed of the true facts when the writ was issued. Defendant established by uncontradicted evidence that both of the children had married and attained their majorities prior to the period involved, but plaintiff's affidavit supporting her application for the writ failed to disclose these material facts. In reversing the order denying defendant's motion, the reviewing court declared (pp. 610-611) :

"While the creditor is, as a matter of right, entitled to an execution, the affidavit, order and execution issued thereon are subject to review and the execution is subject to recall, upon motion, timely made, at which time the trial court may exercise its judicial discretion in determining whether the facts set forth in the affidavit are true, and whether there has been a misrepresentation of the facts or wilful suppression of facts which should have been related to the court in the first instance, or whether the husband was or was not under a legal duty to support the children or wife during the period in question. It therefore would appear that the trial court has, under the circumstances here related, the right to recall the execution and allow the enforcement of the judgment, only to the extent of the husband's legal and equitable liability to pay. . . ."

In *Anderson* v. *Anderson, supra,* 129 Cal.App.2d 403, 406, the law is stated as follows: "The position of the California courts as to unsegregated decrees for support of wife and children after majority of any of the latter is well settled. In *Wilkins* v. *Wilkins,* 95 Cal.App.2d 605 [213 P.2d 748], there appears an excellent review of the cases on the subject. The rule is that the court may modify the prior decree prospectively but may not make a modification operative on payments already accrued. But execution on the latter payments may not issue as a matter of right. The court has the discretion of determining under the equities of the situation whether execution should issue for all or any portion of the accrued amounts. (See also *Parker* v. *Parker,* 203 Cal. 787 [266 P. 283].) Thus, here, the court properly refused to consider the prior decree void, properly proceeded to determine whether execution should issue, and, if so, for what amount, and whether the decree should be modified prospectively."

Defendant points out in his opening brief that the provision of the 1951 agreement requiring that he pay plaintiff $30 per month "for the support *of their minor child*" in lieu of the $75 per month provided for in the judgment "fails to mention which of the two children was entitled to the $30 per month, if only one was entitled to it." He then argues that in view of plaintiff's statement that she agreed to the reduction because of the grandmother's promise to provide for Blaine's education, "it is reasonable to assume that the $30 per month was for Edgar Lee . . ."

Defendant's argument amounts to a concession that the intent of the agreement was uncertain and that extrinsic evidence might properly be considered to resolve that uncertainty. In the light of all the circumstances revealed by the present record, the trial court might reasonably have found either that the $30 monthly payment was intended for the support of the younger child, or that the parties intended that the reduced payments should continue until both children had attained their majorities. Although there was a difference of almost five years in the ages of the two children, no provision was made for a further reduction of the payments upon the older child's attaining his majority.

An appellate court will accept and adhere to an interpretation of a contract adopted by the trier of fact and not substitute its own interpretation where extrinsic evidence is introduced in aid of interpreting the contract and from such evidence conflicting inferences may be drawn. (*E. K. Wood*

*Lumber Co.* v. *Higgins,* 54 Cal.2d 91, 94 [4 Cal.Rptr. 523, 351 P.2d 795]; *Estate of Rule,* 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319].) ■ And even where no extrinsic evidence has been introduced, the interpretation placed upon the contract by the trial court will be accepted by the reviewing court if such interpretation is reasonable, or if the interpretation of the trial court is one of two or more reasonable constructions of the instrument. (*Prickett* v. *Royal Ins. Co., Ltd.,* 56 Cal.2d 234, 237 [14 Cal.Rptr. 675, 363 P.2d 907].)

■ We conclude that the trial court did not err or abuse its discretion in determining that defendant owed a legal and equitable duty to contribute $30 per month to the support of the minor child for the period in question, and in allowing enforcement of the judgment to that extent.

■ Defendant's final contention is that the agreements entered into between the parties in 1951 "satisfied for all time" his obligation to plaintiff to pay child support. In arguing that this result was intended by the parties, he refers to the testimony in his affidavit to the effect that the consideration received by plaintiff under the 1951 agreement exceeded in value the aggregate of the amounts claimed by plaintiff through April 1960. Defendant also refers to his testimony with respect to alleged contemporaneous oral representations to the effect that plaintiff would never make any claims upon him for the support of either of the minor children.

Defendant further argues that the agreement of February 28, 1951, evidenced plaintiff's promise that the children would be immediately adopted by her then husband. In this connection he refers to the provision wherein plaintiff acknowledged satisfaction of all claims for child support "until January 1, 1956, or until such time as [plaintiff] and her present husband shall adopt the children, whichever shall the sooner occur."

These arguments overlook the fact that the defendant's affidavit is contradicted by those of plaintiff and that the alleged oral representations are at variance with the terms of the writings. The trial court reasonably and properly held that the last-quoted provision of the agreement did not constitute a promise that the children would be adopted, but simply acknowledged that the event of adoption would terminate defendant's obligation.

In this state of the record we are required to apply certain established principles. ■ "An appellate court will not

disturb the implied findings of fact made by a trial court in support of an order, any more than it will interfere with express findings upon which a final judgment is predicated. When the evidence is conflicting, it will be presumed that the court found every fact necessary to support its order that the evidence would justify. So far as it has passed on the weight of the evidence, its implied findings are conclusive. This rule is equally applicable whether the evidence is oral or documentary." (*Murray* v. *Superior Court*, 44 Cal.2d 611, 619 [284 P.2d 1]; *Bailey* v. *County of Los Angeles*, 46 Cal.2d 132, 137 [293 P.2d 449].) "When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and when there is a substantial conflict in the facts stated, the determination of the controverted facts by the trial court will not be disturbed." (*Bailey* v. *County of Los Angeles, supra,* 46 Cal.2d 132, 137; *Preiss* v. *Good Samaritan Hospital,* 171 Cal.App. 2d 559, 564 [340 P.2d 661].) The rule that a trial court is not required to accept as true the sworn testimony of a witness even in the absence of evidence directly contradicting it, applies to affidavits. (*Lohman* v. *Lohman,* 29 Cal.2d 144, 149 [173 P.2d 657]; *People* v. *Bannister,* 153 Cal.App.2d 480, 484 [314 P.2d 577].)

The order under review is affirmed.

Fox, P. J., and Ashburn, J., concurred.